FRANK E. AND EVELYN D. BELLINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Belline v. Commissioner
Docket No. 787-79.
United States Tax Court
T.C. Memo 1981-570; 1981 Tax Ct. Memo LEXIS 172; 42 T.C.M. (CCH) 1292; T.C.M. (RIA) 81570; 2 Employee Benefits Cas. (BNA) 2045; September 30, 1981. Frank E. Belline, pro se. Martha E. Rist, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $ 470 in the Federal income tax of petitioners for their taxable year 1976. The issues before us are: (1) whether petitioners may deduct, pursuant to section 164 of the Internal Revenue Code *173 , [1] that part of the purchase price of their new residence (the Residence) representing state sales taxes paid by the builder and subcontractors for building supplies used in and for the construction of the Residence; and (2) whether petitioners are entitled to exclude from gross income any of the amount of a distribution they received from Ford Motor Company's Savings & Stock Investment Plan (SSIP) in 1976. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners timely filed their 1976 joint Federal income tax return with the Internal Revenue Service. At the time they filed their petition herein, they resided in Wayzata, Minnesota. On May 30, 1976, petitioners executed a Purchase Agreement for the Residence., At that time, the construction of the Residence was substantially complete. By July 21, 1976, construction was entirely completed. On that date, petitioners completed the purchase by executing a Settlement Statement. The *174 seller and builder of the Residence was one Ronald W. Hockridge (Hockridge). The Purchase Agreement and Settlement Statement were standard form documents and stated the total purchase price (the "contract sales price") of the Residence to be $ 86,700. Each document was executed by Hockridge as seller and owner and by petitioners as purchasers. Petitioners purchased none of the materials and supplies used in the construction of the Residence; these were all purchased by Hockridge or pursuant to subcontracts entered into by him. On their 1976 return, petitioners claimed a deduction of $ 1,294 for the portion of the cost of the Residence attributable to Minnesota state sales taxes paid upon the purchase and sale of the various building materials and supplies used in its construction. During the years 1962 through 1976, petitioner Frank E. Belline was employed by Ford Motor Company and participated in Ford's Savings & Stock Investment Plan (SSIP) which was a qualified Employee Stock Ownership Plan. In 1976, petitioners received a distribution from the SSIP, $ 809 of which they included in their gross income for that year. The following table reflects relevant data from year-end *175 statements rendered to petitioner Frank E. Belline by the Plan: STATEMENT DATE
12/31/72
Year
Amount of
Contribution
Employee
Shares
Shares
Made
Contribution
Purchased [1]
Purchased [2]
1969
$ 1,356
29.9556
4.9167
1970
1,680
37.6477
4.6423
1971
2,010
31.5789
1.7978
1972
2,184
31.4858
.5264
1973
2,384
1974
2,608
1975
2,792
1976
3,435
STATEMENT DATE
12/31/74
Year
Contribution
Shares
Shares
Made
Purchased [1]
Purchased [2]
1969
29.9556
9.9017
1970
37.6477
10.6877
1971
1972
31.4858
5.1025
1973
42.0811
4.5022
1974
63.5921
1.8415
1975
1976
STATEMENT DATE
STATEMENT DATE
12/31/75
12/31/76
Year
Contribution
Shares
Shares
Shares
Shares
Made
Purchased [1]
Purchased [2]
Purchased [1]
Purchased [2]
1969
29.9556
12.6956
29.9556
14.8184
1970
37.6477
14.0760
37.6477
16.6503
1971
1972
1973
42.0811
7.7675
1974
63.5921
6.3997
63.5921
9.8834
1975
71.3076
1.6224
71.3076
5.2398
1976
60.4740
1.1545
*176 Prior to September 20, 1979, the Internal Revenue Service took the position that a distribution from the SSIP of stock attributable to a given contribution (or "class) year to a participant was taxable to the extent that it exceeded the amount contributed in such class year, regardless of what amounts had been contributed in other years. On September 20, 1979, the Internal Revenue Service issued a private ruling letter to the SSIP in which it changed its position, permitting any distribution to be offset by the total of employee contributions from all years which had not been already used to offset prior distributions. On March 1, 1980, after the petition herein was filed, petitioners filed an amended return for, interalia, the taxable year 1976, claiming that under the new private letter ruling the $ 809 they had included in their gross income was not in fact so includible because the entire 1976 distribution was more than offset by prior contributions which had not themselves been used to offset other distributions. The Commissioner determined in the statutory notice of deficiency that petitioners were entitled to no deduction for the sales taxes paid upon the purchase *177 by Hockridge or his subcontractors of the building materials and supplies used in constructing the Residence. Petitioners claim that not only is there no deficiency as alleged in the determination but that they actually overpaid their 1976 tax on account of their erroneous inclusion in gross income of the $ 809 portion of the 1976 distribution from the SSIP. OPINION Issue 1. Deductibility of State Sales Tax
Petitioners purchased a house (the Residence) from its builder, whose purchases of building materials and supplies used in constructing the Residence gave rise to Minnesota state sales tax. Petitioners claim that they are entitled to deduct such sales taxes in 1976, the year they purchased the Residence. The pertinent parts of section 164 provide: SEC. 164. TAXES. (a) GENERAL RULE.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (1) State and local, and foreign, real property taxes. (2) State and local personal property taxes. (3) State and local, and foreign, income, war profits, and excess profits taxes. (4) State and local general sales taxes. *178 (5) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels. In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income). (b) DEFINITIONS AND SPECIAL RULES.--For purposes of this section-- (5) SEPARATELY STATED GENERAL SALES TAXES AND GASOLINE TAXES.--If the amount of any general sales tax * * * is separately stated, then to the extent that the amount so stated is paid by the consumer (otherwise than in connection with the consumer's trade or business) to his seller, such amount shall be treated as a tax imposed on, and paid by, such consumer. The Income Tax Regulations provide: SEC. 1.164-3. Definitions and special rules. (e) Sales tax. (1) the term "sales tax" means a tax imposed upon persons engaged in selling tangible personal property, or upon the consumers of such property, * * * which is a stated sum per unit of property sold or which is measured by the gross sales price or the gross receipts *179 from the sale. * * * (2) In general, the term "consumer" means the ultimate user or purchaser; it does not include a purchaser such as a retailer, who acquires the property for resale. SEC. 1.164-5. Certain retail sales taxes and gasoline taxes. For taxable years beginning after December 31, 1963, only the amount of any separately stated State and local general sales tax * * * paid by the consumer (other than in connection with his trade or business) is deductible by the consumer as tax. The fact that, under the law imposing it, the incidence of such State or local tax does not fall on the consumer is immaterial. The requirement that the amount of tax must be separately stated will be deemed complied with where it clearly appears that at the time of sale to the consumer, the tax was added to the sales price and collected or charged as a separate item. It is not necessary, for the purpose of this section, that the consumer be furnished with a sales slip, bill, invoice, or other statement on which the tax is separately stated. For example, where the law imposing the State or local tax for which the taxpayer seeks a deduction contains a prohibition against the seller absorbing *180 the tax, or a provision requiring a posted notice stating that the tax will be added to the quoted price, or a requirement that the tax be separately stated on all bills and invoices, it is presumed that the amount of the State or local tax was separately stated at the time paid by the consumer; * * * Generally, taxes are deductible only by the person upon whom they are imposed. Sec. 1.164-1(a), Income Tax Regs.Section 164(b)(5), quoted supra, provides an exception to this rule in the case of separately stated sales taxes paid by a consumer of tangible personal property. Petitioners contend that they were the "ultimate consumer" of the building materials and supplies used in constructing the Residence and thus are able to deduct the sales taxes paid upon the purchase/sale of these materials. Petitioners have the burden of proving that they as ultimate consumers paid the sales taxes within the meaning of section 164(b)(5). Welch v. Helvering, 290 U.S. 111 (1933). We first look to State law to determine upon whom the taxes are imposed. If they are actually imposed upon petitioners, of course, our inquiry need proceed no further, as they would be entitled *181 to deduct such taxes when paid without regard to the special provision of section 164(b)(5). Minn. Stat. Ann. secs. 297A.01, 297A.02 (West 1972), provided during the taxable year before us as follows: 297A.01 Definitions Subdivision 1. The following words, terms, and phrases when used in Sections 297A.01 to 297A.44 shall have the meanings ascribed to them in this section except where the context clearly indicates a different meaning. Subdivision 4. A "retail sale" or "sale at retail" means a sale for any purpose other than resale in the regular course of business. Property utilized by the owner only by leasing such property to others or by holding it in an effort to so lease it, and which is put to no use by the owner other than resale after such lease or effort to lease, shall be considered property purchased for resale. Sales of building materials, supplies and equipment to owners, contractors, subcontractors or builders for the erection of buildings or the alteration, repair or improvement of real property are "retail sales" or "sales at retail" in whatever quantity sold and whether or not for purpose of resale in the form of real property or *182 otherwise. 297A.02 Imposition of tax Except as otherwise provided in Extra Session, Laws 1971, Chapter 31, article 1, there is hereby imposed an excise tax of four percent of the gross receipts from sales at retail, as hereinbefore defined, made by any person in this state after October 31, 1971. * * * In County of Hennepin v. Minnesota, 263 N.W. 2d 639 (Minn. 1978), the Supreme Court of Minnesota held that the sale to a contractor of building materials and supplies to be used by the contractor in constructing part of a building was a taxable retail sale, as opposed to the contractor's contention that the materials and supplies were in effect purchased for resale at retail to the County, which had hired the contractor to perform the construction work. The contractor was held liable for payment of the sales tax. Thus, under Minnesota law, it appears that the burden of sales tax for building materials is upon a contractor who agreed to erect a structure. As the sales tax is imposed upon the contractor, it would follow that, were the contractor in fact merely an agent of the person constructing the building, the sales tax might be viewed as actually being imposed *183 upon the latter. See Armentrout v. Commissioner, 43 T.C. 16, 20-21 (1964); Petty v. Commissioner, 77 T.C.     (Aug. 24, 1981). If a principal-agent relationship in fact existed between petitioners and Hockridge respecting the purchase of the building supplies and materials, petitioners would be the real purchasers of these items and would, therefore, be the persons upon whom the sales tax was "imposed" and would be able to deduct them under section 164(a), without need to resort to section 164(b)(5). It is clear to us, however, that no such agency existed. The only legal documents in evidence indicate that the transaction was a simple, routine sale of residential real estate by Hockridge to petitioners. There is no evidence that Hockridge was ever contracted by petitioners to build the Residence [2] or that he was subject to their direction and control in making decisions respecting its construction. The record shows simply that Hockridge built the Residence and then sold it to petitioners. In both Armentrout and Petty, supra, we found that no agency relationship existed on facts much more consistent with such a relationship. In both cases, *184 taxpayers hired construction companies to purchase the necessary materials and furnish the necessary labor in constructing the houses. Armentrout, 43 T.C. at 17; Petty, supra at    . In the instant case, the evidence permits us to infer, and petitioners have not shown otherwise, that Hockridge was completely independent of petitioners in making all decisions with respect to the construction of the Residence and that, therefore, no agency relationship ever existed between them. It follows from the above discussion that sales taxes were not imposed upon the petitioners within the meaning of section 164(a). Thus, in order to deduct any part of such taxes, petitioners must show that they were the ultimate users or purchasers of the materials and supplies and that they paid a separately stated sales tax respecting these items. The Income Tax Regulations quoted above provide that a sales tax is a tax imposed *185 upon persons engaged in selling tangible personal property or upon the consumers of such property. What petitioners bought and paid for, however, was not tangible personal property but was real property--a house with integrated components. Thus, they were not the parties to a sale of tangible personalty, i.e., to a sales tax-generating transaction. Rather, they were one step removed from such a transaction. They did not ultimately use or consume the separate materials and supplies which Hockridge or his subcontractors purchased and paid sales tax upon; rather, they used a house, the Residence, of which these items had become integral elements. The Supreme Court of Minnesota holds that section 297A.01: reflects a legislative determination that construction contractors, subcontractors, and builders are the ultimate users of building materials and supplies. This determination is entirely reasonable since once the contractor, subcontractor, or builder has incorporated the materials or supplies into a building, the materials and supplies lose their identity as personal property and become part of the realty. County of Hennepin, supra at 640, n. 1. *186 A state's highest court is the final judicial arbiter of the meaning of state statutes and its finding must be accorded great weight in determining the statute's natural effect. If consistent with the statute's reasonable interpretation, such finding will be deemed conclusive. Gurley v. Rhoden, 421 U.S. 200, 208 (1975). Since the builder and his subcontractors are the ultimate users of the materials and supplies, it follows that petitioners are not and are hence unable to deduct the sales taxes paid by Hockridge. Issue 2. Excludability of SSIP Distribution
In 1976, petitioner received distributions from Ford's SSIP. The Commissioner originally took the position at the time that this and similar distributions were taxable to the extent they exceeded the contributions which the employee made during the year in which the distributed stock was purchased with such contributions. Thus, for example, if in 1976 a taxpayer received stock which had been purchased with his 1973 contributions, he would have reported, under the Commissioner's prior view, gross income measured by the excess (if any) of the fair market value of the distributed stock over the amount *187 of 1973 contributions. However, as of September 20, 1979, the Commissioner by private ruling letter to the SSIP took a new position, allowing any stock distribution to be offset not only by contributions made during the year of purchase but also by the total of contributions for all previous and subsequent years which had not been used to offset prior distributions (the "unused contribution balance"). Respondent does not dispute the validity of this new position but claims that the petitioner has not adequately substantiated that as of 1976 his unused contribution balance was great enough to offset more of the distribution than had been offset in arriving at the $ 809 figure which petitioners originally included in their 1976 gross income. We agree. Petitioners submitted in evidence some year-end statements of the SSIP, several of which have been abstracted into the chart in the findings of fact. The statements only listed SSIP assets attributable to petitioner Frank Belline's contributions; there was no record of distributions made. Petitioner submitted a worksheet which he used in filing his amended 1976 return [3] and pursuant to which he arrived at an unused contribution *188 balance of $ 19,893 as of 1976. In computing this, he simply added all of his contributions since 1962 without taking into account the amount of any pre-1976 distributions offset by such contributions. A cursory perusal of the chart in the findings of facts reveals, however, that there were pre-1976 distributions. For example, the year-end statement dated December 31, 1972, shows that the SSIP held a total of 33.3767 shares of stock purchased with contributions made during 1971. However, the December 31, 1974, statement indicates that the SSIP held none of these shares, indicating that they must have been distributed during 1973 or 1974 (no December 31, 1973, statement was submitted). There may have been numerous other distributions prior to 1972 which were similarly not accounted for in computing the unused contribution balance. Thus, we are unable to find that petitioners have adequately substantiated the $ 19,893 figure and shown that less than $ 809 of the 1976 distribution was includible in their 1976 gross income. To reflect the foregoing, Decision will *189 be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified.↩
1. Shares purchased with contribution made in such year and still held as of relevant statement date. In fact, petitioners did not sign a purchase agreement until the construction work was nearly complete. There is no evidence of any prior agreements or even dealings between the parties, e.g., a construction contract or agency agreement.
[2]↩ Shares purchased with dividends from shares in preceding column.
3. We treat this as a claim for overpayment, as it was filed after the petition herein. See sec. 6512.↩